**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| **ANESSIA AMOKO individually and on behalf all others similarly situated,** | Case No: |
| **Plaintiff,**<br>**V.** | **CLASS AND COLLECTIVE ACTION COMPLAINT** |
| **N&C CLAIMS SERVICE, INC., NICHOLAS F. IERULLI, PAM IERULLI, AND SEIBELS SERVICES GROUP, INC.,** | **JURY DEMANDED** |
| **Defendants.** | |

## COMPLAINT

Plaintiff Anessia Amoko, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), by her attorneys, upon personal knowledge as to herself and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1.      Anessia Amoko was employed by Defendants N&C Claims Service, Inc., Nicholas F. Ierulli, Pam Ierulli, and Seibels Services Group, Inc. ("Seibels") as an insurance claims adjuster in Seibels' offices in Columbia, South Carolina, along with more than 40 other insurance claims adjusters. Amoko and the other insurance claims adjusters regularly worked in excess of 40 hours in a week. Despite the long hours, Defendants did not pay Amoko or the other insurance claims adjusters overtime wages. Instead, Defendants told Amoko and the other insurance claims adjusters that they were independent contractors. Based on that misrepresentation, Defendants told Amoko and the other insurance claims adjusters that they would be paid a "day rate" for each day they worked, *i.e.*, a set rate of pay per day regardless of the hours worked. In reality, Defendants

1

did not pay them a day rate. Instead, Defendants made deductions to the day rate if the adjusters worked fewer than their scheduled hours. When the adjusters worked more than the scheduled hours, Defendants did not pay them for the additional time. In May 2019, Defendants moved Amoko and the other insurance claims adjusters from the day rate system to an hourly wage but continued not to pay for all the hours the claims adjusters worked. At no time did Defendants pay Amoko and the other insurance claims adjusters overtime wages.

2.     This case seeks to compel Defendants to pay Amoko and a class of similarly situated employees all wages they earned.

3.     By the conduct described in this Class Action Complaint, Defendants have violated the Fair Labor Standards Act ("FLSA") by failing to pay their employees proper overtime compensation and have violated the South Carolina Payment of Wages Act ("SCPWA") by making unauthorized deductions to wages and by not paying their employees their hourly wage for all the hours they worked. These violations arose out of Defendants' company-wide policies and patterns or practices.

4.     Amoko brings claims for unpaid overtime wages on her own behalf and on behalf of other similarly situated employees, under 29 U.S.C. §§ 201 *et seq.*, and specifically, the collective action provision, 29 U.S.C. § 216(b). This group, as defined in paragraph 31, is referred to as the "FLSA Collective."

5.     Amoko also brings individual and representative wage claims under the SCPWA, S.C. Code Ann. § 41-10-10 *et seq.*, as a class action pursuant to Fed. R. Civ. P. 23 for Defendants' unauthorized deductions from the wages of Amoko and the SC Classes, as defined in paragraphs 33 and 34, and Defendants' failure to pay them for all the hours they worked.

6.     Finally, Amoko brings individual and representative wage claims under the

SCPWA, S.C. Code Ann. § 41-10-10 *et seq*., as a class action pursuant to Fed. R. Civ. P. 23 for Defendants' failure to pay Amoko and the SC Classes for all the hours they worked after the change in compensation in May 2019.

## THE PARTIES

*Plaintiffs*

7.     Plaintiff Amoko's written consent to be a party to this action is attached as Exhibit A.

8.     Amoko currently resides in Frisco, Texas.

9.     Amoko was employed by Defendants as an insurance claims adjuster at Defendant Seibels' offices in Columbia, South Carolina from approximately March 2019 to September 2019.

10.     Pursuant to Defendants' policy and pattern or practice, Amoko was scheduled to work more than 40 hours each week, and she regularly worked more than 40 hours per week for Defendants' benefit without overtime compensation.

11.     Pursuant to Defendants' policy and pattern or practice, Defendants made deductions from Amoko's wages without giving her the written notice required by the SCPWA.

12.     Pursuant to Defendants' policy and pattern or practice, Defendants did not pay Amoko for all the hours she worked.

*The Defendants*

13.     Defendant N&C Claims Service, Inc. ("N&C") is a for-profit Florida corporation that provides insurance adjustment services to companies such as Seibels.

14.     N&C has offices located at 1999 Lincoln Drive, Suite 201, Sarasota, FL 34236. Its mailing address is 5824 Bee Ridge Road, #328, Sarasota, FL 34233.

15.     N&C acted as an employer of Amoko until approximately September 2019, and it

acted and continues to act as an employer of the FLSA Collective and the SC Classes within the meaning of 29 U.S.C. § 203(d).

16.     Nicholas F. Ierulli is the President and a Principal of N&C Claims Services, Inc.

17.     Mr. Ierulli's address is 1808 Stanford Lane, Sarasota, FL 34231.

18.     Upon information and belief, as President and Principal of N&C, Mr. Ierulli acted directly and indirectly in N&C's interest in relation to Amoko until approximately September 2019, and he acted and continues to act directly and indirectly in N&C's interest in relation to the FLSA Collective, and the SC Classes, and thus, he is their employer within the meaning of 29 U.S.C. § 203(d).

19.     Pam Ierulli is the Vice President and a Principal of N&C Claims Services, Inc.

20.     Ms. Ierulli's address is 1808 Stanford Lane, Sarasota, FL 34231.

21.     Upon information and belief, as Vice President and Principal of N&C, Ms. Ierulli acted directly and indirectly in N&C's interest in relation to Amoko until approximately September 2019, and she acted and continues to act directly and indirectly in N&C's interest in relation to the FLSA Collective, and the SC Classes, and thus, she is their employer within the meaning of 29 U.S.C. § 203(d).

22.     Defendant Seibels Services Group, Inc., is a for-profit South Carolina corporation with offices at 1501 Lady Street, Columbia, SC 29202.

23.     Seibels acted as an employer of Amoko until approximately September 2019, and it acted and continues to act as an employer of the FLSA Collective and the SC Classes within the meaning of 29 U.S.C. § 203(d).

24.     Upon information and belief, each Defendant grossed more than $500,000 in each of the past three fiscal years.

25.    Defendants operate an enterprise engaged in commerce within the meaning of the FLSA.

### JURISDICTION AND VENUE

26.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and jurisdiction over these state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.

27.    In addition, the Court has jurisdiction over these claims under the FLSA pursuant to 29 U.S.C. § 216(b).

28.    Defendants are subject to personal jurisdiction in South Carolina pursuant to SC Code Ann. §§ 36-2-802 and 36-2-803, in that:

   a.    N&C does business in South Carolina; employs or has employed individuals in South Carolina, including Amoko, the members of the FLSA Collective, and members of the SC Classes; and contracts to supply services in South Carolina, all of which are the subject of this action;

   b.    Mr. Ierulli, as President and Principal of N&C, does business in South Carolina; employs or has employed individuals in South Carolina, including Amoko, the members of the FLSA Collective, and members of the SC Classes; and contracts to supply services in South Carolina, all of which are the subject of this action;

   c.    Ms. Ierulli, as Vice President and Principal of N&C, does business in South Carolina; employs or has employed individuals in South Carolina, including Amoko, the members of the FLSA Collective, and members of the SC Classes; and contracts to supply services in South Carolina, all of which are the subject of this action; and

   d.    Seibels is incorporated under the laws of South Carolina; maintains its principal

place of business in South Carolina; does business in South Carolina; and employs

or has employed individuals in South Carolina, including Amoko, the members of

the FLSA Collective, and members of the SC Classes.

29.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C.

§§ 2201 and 2202.

30.    Venue is proper in the District of South Carolina pursuant to 28 U.S.C. § 1391(b)

and (c) because a substantial part of the events, acts, or omissions giving rise to the claim occurred

in this District and Defendants are subject to personal jurisdiction here.

## COLLECTIVE ACTION ALLEGATIONS

31.    Amoko brings FLSA claims, the First Cause of Action, on behalf of herself and all

similarly situated persons:

> who worked for N&C Claims Services, Inc. and Seibels Services Group, Inc. in South
> Carolina as insurance adjusters and who were classified as independent contractors and not
> paid overtime wages for hours worked more than 40 in a week at any time between three
> years prior to the filing of this complaint and the date of final judgment in this matter (the
> "FLSA Collective").

32.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate

Amoko and the FLSA Collective. Upon information and belief, there are many similarly situated

current and former employees of Defendants who have been underpaid in violation of the FLSA

who would benefit from the issuance of a court-supervised notice of the present lawsuit and the

opportunity to join the present lawsuit. Those similarly situated employees are known to

Defendants, are readily identifiable, and can be located through Defendants' records. Notice

should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

33.    Amoko brings the Second Cause of Action under Rule 23 of the Federal Rules of

Civil Procedure, on behalf of herself and a class of persons consisting of:

> All persons who worked for N&C Claims Services, Inc. and Seibels Services Group, Inc. in South Carolina as insurance adjusters and who were classified as independent contractors and told they would be paid a day rate at any time between the date three years preceding the filing of this complaint and the date of final judgment in this matter (the "SC Day Rate Class").

34.     Amoko brings the Third Cause of Action under Rule 23 of the Federal Rules of

Civil Procedure, on behalf of herself and a class of persons consisting of:

> All persons who worked for N&C Claims Services, Inc. and Seibels Services Group, Inc. in South Carolina as insurance adjusters and who were classified as independent contractors and told they would be paid an hourly rate at any time between the date three years preceding the filing of this complaint and the date of final judgment in this matter (the "SC Hourly Class").

35.     The members of the SC Classes and Defendants' pay practices are readily

identifiable from Defendants' records.

36.     Excluded from the SC Classes are Defendants' legal representatives, officers,

directors, assigns, and successors, or any individual who has, or who at any time during the class

period has had a controlling interest in Defendants; the Judge(s) to whom this case is assigned and

any member of the Judges' immediate family; and all persons who will submit timely and

otherwise proper requests for exclusion from the SC Classes.

37.     The persons in the SC Classes identified above are so numerous that joinder of all

members is impracticable.

38.     Upon information and belief, the size of each of the SC Classes is more than 40

workers. Although the precise number of such persons is not known to Amoko, the facts on which

the calculation of that number can be based are presently within the sole control of Defendants.

39.     Defendants acted or refused to act on grounds generally applicable to the SC

Classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with

respect to the SC Classes as a whole.

40.    The Second and Third Causes of Action are properly maintainable as class actions under Federal Rule of Civil Procedure 23(b)(3). There are questions of law and fact common to the SC Classes that predominate over any questions solely affecting individual members of the SC Classes, including but not limited to:

a.    whether Defendants misclassified Amoko and the members of the SC Classes as independent contractors;

b.    whether Amoko and the members of the SC Classes were employees of Defendants;

c.    whether Defendants made deductions from the wages of Amoko and the members of the SC Day Rate Class;

d.    whether Defendants provided written notice of deductions to wages as required by the SCPWA, S.C. Code Ann. § 41-10-30;

e.    whether the day rate Defendants paid, subject to deductions for failure to work scheduled hours, was an hourly rate;

f.    whether Defendants paid Amoko and the SC Day Rate Class for all the hours they worked;

g.    whether Defendants paid Amoko and the SC Hourly Class an hourly rate;

h.    whether Defendants paid Amoko and the SC Hourly Class for all the hours they worked;

i.    whether Defendants paid Amoko and the SC Classes all the wages they were due as required by S.C. Code Ann. § 41-10-40;

j.    whether Defendants acted intentionally or in bad faith in failing to pay

Amoko and the SC Classes their wages; and

k. whether Defendants are liable for treble damages for failing to pay wages when due.

41. Amoko's claims are typical of the claims of the SC Classes that she seeks to represent. Defendants made deductions from the wages of Amoko and the SC Day Rate Class without providing the written notice required by the SCPWA and failed to pay them for all the hours they worked. Defendants also failed to pay Amoko and the SC Hourly Class for all the hours they worked. Defendants acted and refused to act on grounds generally applicable to the SC Classes, thereby making declaratory relief with respect to the SC Classes appropriate.

42. Amoko will fairly and adequately represent and protect the interests of the SC Classes. She understands that, as a class representative, she assumes a fiduciary responsibility to the SC Classes to represent its interests fairly and adequately. Amoko recognizes that as class representative, she must represent and consider the interests of the SC Classes just as she would represent and consider her own interests. She understands that in decisions regarding the conduct of the litigation and its possible settlement, she must not favor her own interests over those of the SC Classes. She recognizes that any resolution of a class action lawsuit, including any settlement or dismissal thereof, must be in the best interests of the SC Classes. Amoko understands that in order to provide adequate representation, she must remain informed of developments in the litigation, cooperate with class counsel by providing information and any relevant documentary material in her possession, and testify, if required, in a deposition and in trial.

43. Amoko has retained counsel competent and experienced in complex class action employment litigation.

44. A class action is superior to other available methods for the fair and efficient

adjudication of this litigation—particularly in the context of wage litigation like the present action, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against a corporate defendant and where class members may fear retaliation by their employers. The members of the SC Classes have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures. Although the relative damages suffered by individual members of the SC Classes are not de minimis, such damages are small compared to the expense and burden of individual prosecution of this litigation. In addition, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

## **FACTUAL ALLEGATIONS**

45.    Amoko, the SC Classes, and the FLSA Collective are insurance claims adjusters.

46.    Defendants' business is to provide insurance claims adjusting services to insurance companies.

47.    Defendants hired Amoko, the SC Classes, and the FLSA Collective to provide insurance claims adjusting services to insurance companies.

48.    The insurance adjustment work that Amoko, the SC Classes, and the FLSA Collective performed is an integral part of Defendants' business.

49.    Defendants misclassified Amoko, the SC Classes, and the FLSA Collective as independent contractors.

50.    Amoko, the SC Classes, and the FLSA Collective were employees of Defendants.

51.    Defendants employed other insurance claims adjusters who Defendants classified as employees.

52.    Amoko, the SC Classes, and the FLSA Collective performed the same claims

adjusting work as Defendants' employee insurance claims adjusters.

53.    Amoko, the SC Classes, and the FLSA Collective performed their claims adjusting work for the same insurance companies as Defendants' employee insurance claims adjusters.

54.    Amoko, the SC Classes, and the FLSA Collective performed their work at Defendants' offices.

55.    Defendants had the authority to hire and fire Amoko, the SC Classes, and the FLSA Collective.

56.    Defendants had the authority to discipline Amoko, the SC Classes, and the FLSA Collective.

57.    Defendants set the human resources policies that Amoko, the SC Classes, and the FLSA Collective were required to follow.

58.    Defendants maintained employment records for Amoko, the SC Classes, and the FLSA Collective.

59.    Defendants trained Amoko, the SC Classes, and the FLSA Collective in how to perform their work.

60.    Defendants provided Amoko, the SC Classes, and the FLSA Collective with the workspace and all the work tools necessary to perform their work, including computers, software, phones, e-mail accounts, and desks.

61.    Defendants provided Amoko, the SC Classes, and the FLSA Collective with company business cards, phone lines, and email accounts.

62.    Defendants actively directed the work of Amoko, the SC Classes, and the FLSA Collective.

63.    Defendants actively supervised the work of Amoko, the SC Classes, and the FLSA

Collective.

64.     Defendants closely monitored the work of Amoko, the SC Classes, and the FLSA Collective.

65.     Defendants scheduled the days and hours that Amoko, the SC Classes, and the FLSA Collective worked.

66.     Defendants required Amoko, the SC Classes, and the FLSA Collective to record when they arrived at work, took breaks, and when they left work.

67.     Defendants required Amoko, the SC Classes, and the FLSA Collective to report the hours they worked.

68.     Defendants set the rate of compensation that Amoko, the SC Classes, and the FLSA Collective received.

69.     The compensation Defendants paid Amoko, the SC Classes, and the FLSA Collective did not vary based on the quality of their work.

70.     Amoko, the SC Classes, and the FLSA Collective were compensated based on the hours they worked.

71.     Amoko, the SC Classes, and the FLSA Collective could not affect their rate of compensation other than to work more scheduled hours and/or days.

72.     Amoko, the SC Classes, and the FLSA Collective were required to personally perform the work Defendants assigned, and they could not hire others to do it.

73.     While working for Defendants, Amoko, the SC Classes, and the FLSA Collective could not provide insurance claims services to insurance companies other than those assigned by Defendants.

74.     Defendants instructed Amoko, the SC Classes, and the FLSA Collective to identify

themselves to Defendants' clients as working for Defendants.

75.    Defendants did not pay Amoko, the SC Classes, and the FLSA Collective for any day that they did not work, regardless of the reason.

76.    Defendants did not pay Amoko, the SC Day Rate Class, and the FLSA Collective the day rate for each day that they worked.

77.    Defendants reduced the day rate they paid Amoko, the SC Day Rate Class, and the FLSA Collective if they worked less than their full schedule of hours.

78.    Defendants reduced the day rate they paid Amoko, the SC Day Rate Class, and the FLSA Collective for partial workdays based on the number of hours they worked that day.

79.    Defendants did not provide the SC Day Rate Class with written notice that Defendants would make deductions from the day rate for not working the full schedule of hours.

80.    Defendants did not pay Amoko, the SC Day Rate Class, and the FLSA Collective additional pay when they worked beyond their scheduled hours.

81.    Beginning in May 2019, Defendants told Amoko, the SC Hourly Class, and the FLSA Collective that they would be paid an hourly rate for their work.

82.    Defendants paid Amoko, the SC Hourly Class, and the FLSA Collective the hourly rate for up to ten hours of work per day. If they worked more than ten hours, Defendants did not pay them for it.

83.    Amoko, the SC Classes, and the FLSA Collective were regularly scheduled to and did in fact work more than 10 hours per day.

84.    Defendants did not pay Amoko, the SC Classes, and the FLSA Collective for all hours they worked.

85.    Defendants regularly scheduled Amoko, the SC Classes, and the FLSA Collective

to work more than 40 hours in a week and they did in fact work regularly more than 40 hours a week.

86.     Defendants did not pay Amoko, the SC Classes, and the FLSA Collective an overtime premium when they worked more than 40 hours in a week.

87.     Upon information and belief, it was Defendants' willful policy and pattern or practice to make deductions to the day rate they paid Amoko, the SC Day Rate Class, and the FLSA Collective without providing the written notice required by the SCPWA.

88.     Upon information and belief, it was Defendants' willful policy and pattern or practice to deduct wages from the day rate they paid Amoko, the SC Day Rate Class, and the FLSA Collective.

89.     Upon information and belief, it was Defendants' willful policy and pattern or practice not to pay Amoko, the SC Classes, and the FLSA Collective for all the hours they worked.

90.     Upon information and belief, it was Defendants' willful policy and pattern or practice not to pay its employees, including Amoko, the SC Classes, and the FLSA Collective an overtime premium for work that exceeded 40 hours in a week.

91.     Defendants' unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to Amoko, the SC Classes, and the FLSA Collective.

92.     Defendants were aware or should have been aware that Amoko, the SC Classes, and the FLSA Collective were employees under federal and state law.

93.     Defendants were aware or should have been aware that the law prohibited them from making deductions to the wages of Amoko and the SC Day Rate Class without providing written notice as required by the SCPWA. Upon information and belief, Defendants applied the

14

same unlawful policies and practices to Amoko, the SC Day Rate Class, and the FLSA Collective.

94.     Defendants were aware or should have been aware that the law required them to pay non-exempt employees, including Amoko, the SC Classes, and the FLSA Collective, for all hours worked. Upon information and belief, Defendants applied the same unlawful policies and practices to Amoko, the SC Hourly Class, and the FLSA Collective.

95.     Defendants were aware or should have been aware that the law required them to pay non-exempt employees, including Amoko and the FLSA Collective, overtime wages when they worked more than 40 hours in a week. Upon information and belief, Defendants applied the same unlawful policies and practices to Amoko and the FLSA Collective.

**FIRST CAUSE OF ACTION**
**Fair Labor Standards Act: Overtime Wages**
**On behalf of Amoko and the FLSA Collective**

96.     Amoko re-alleges and incorporates by reference the allegations in ¶¶ 1-95.

97.     Defendants engaged in a widespread pattern, policy, and practice of violating the FLSA, as detailed in this Class Action Complaint.

98.     During the three years preceding the filing of this Complaint, Amoko and the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

99.     Defendants were employers engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

100.     The overtime wage provisions set forth in the FLSA apply to Defendants and protect Amoko and the FLSA Collective.

101.     At all times relevant, Amoko and the FLSA Collective were or have been employees within the meaning of 29 U.S.C. §§ 203(e) and 207(a).

102. Defendants employed Amoko and the FLSA Collective as employees.

103. Defendants failed to pay Amoko and the FLSA Collective the overtime wages to which they are entitled under the FLSA.

104. Defendants' violations of the FLSA, as described in this Complaint, have been willful and intentional.

105. Because Defendants' violations of the FLSA were willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

106. As a result of Defendants' violations of the FLSA, Amoko and the FLSA Collective have suffered damages by being denied overtime wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. §§ 201 *et seq.*

## SECOND CAUSE OF ACTION
### South Carolina Wage Payment Act: Unauthorized Deductions
### On behalf of Amoko and the SC Day Rate Class

107. Amoko re-alleges and incorporates by reference the allegations in ¶¶ 1-106.

108. Defendants have engaged in a widespread pattern, policy, and practice of violating the SCWPA as detailed in this Class Action Complaint.

109. At all times relevant, Amoko and the SC Day Rate Class were or have been Defendants' employees for purposes of the SCWPA.

110. At all times relevant, Defendants employed Amoko and the SC Day Rate Class as employees.

111. Defendants have engaged in a widespread pattern, policy, and practice of making deductions to the wages of Amoko and the SC Day Rate Class without the written notice required

by the SCWPA, S.C. Code Ann. §§ 41-10-30 - 40.

112.    Defendants knew or should have known that the SCWPA prohibits them from making deductions from the wages of Amoko and the SC Day Rate Class without written notice.

113.    As a result of Defendants' violations of the SCWPA, Amoko and the SC Day Rate Class have suffered damages by not being paid the wages they are due and are entitled to recovery of such amounts, treble damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to § 41-10-10 *et seq*.

**THIRD CAUSE OF ACTION**
**South Carolina Wage Payment Act: Failure to Pay for All Hours Worked**
**On behalf of Amoko and the SC Day Rate Class**

114.    Amoko re-alleges and incorporates by reference the allegations in ¶¶ 1-113.

115.    Defendants have engaged in a widespread pattern, policy, and practice of violating the SCWPA as detailed in this Class Action Complaint.

116.    At all times relevant, Amoko and the SC Day Rate Class were or have been Defendants' employees for purposes of the SCWPA.

117.    At all times relevant, Defendants employed Amoko and the SC Day Rate Class as employees.

118.    Defendants have engaged in a widespread pattern, policy, and practice of not paying Amoko and the SC Day Rate Class their hourly wage for all hours they worked.

119.    Defendants' failure to pay Amoko and the SC Day Rate Class their hourly wage for all hours they worked is a violation of the SCWPA, S.C. Code Ann. § 41-10-10 *et seq*.

120.    Defendants knew or should have known that the SCWPA required them to pay Amoko and the SC Day Rate Class their hourly rate for all hours they worked each week.

121.    As a result of Defendants' violations of the SCWPA, Amoko and the SC Day Rate

Class have suffered damages by not being paid the wages they are due, and they are entitled to recovery of such amounts, treble damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to S.C. Code Ann. § 41-10-10 *et seq.*

### FOURTH CAUSE OF ACTION
**South Carolina Wage Payment Act: Unpaid Wages
On behalf of Amoko and the SC Hourly Class**

122.    Amoko re-alleges and incorporates by reference the allegations in ¶¶ 1-121.

123.    Defendants have engaged in a widespread pattern, policy, and practice of violating the SCWPA as detailed in this Class Action Complaint.

124.    At all times relevant, Amoko and the SC Hourly Class were or have been Defendants' employees for purposes of the SCWPA.

125.    At all times relevant, Defendants employed Amoko and the SC Hourly Class as employees.

126.    Defendants have engaged in a widespread pattern, policy, and practice of not paying Amoko and the SC Hourly Class for all hours they worked each week.

127.    Defendants failure to pay Amoko and the SC Hourly Class for all hours they worked is a violation of the SCWPA, S.C. Code Ann. § 41-10-10 *et seq.*

128.    Defendants knew or should have known that the SCWPA required them to pay Amoko and the SC Hourly Class for all the hours they worked.

129.    As a result of Defendants' violations of the SCWPA, Amoko and the SC Hourly Class have suffered damages by not being paid the wages they are due, and they are entitled to recovery of such amounts, treble damages, prejudgment interest, attorneys' fees, costs, and other

compensation pursuant to S.C. Code Ann. § 41-10-10 *et seq*.

## PRAYER FOR RELIEF

**WHEREFORE**, Amoko, individually and on behalf of all other similarly situated persons, prays for the following relief:

A.     That, at the earliest possible time, Amoko be allowed to give notice of this collective action and that Defendants provide Amoko with names, addresses, telephone numbers, and other contact information for purposes of issuing notice to the FLSA Collective described in this Complaint. Such notice shall inform members of the FLSA Collective that this civil action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied proper wages; and

B.     Defendants pay Amoko and the FLSA Collective pay the unpaid wages, an additional and equal amount as liquidated damages, interest, attorneys' fees, costs (including expert fees), and other compensation pursuant to 29 U.S.C. §§ 201 *et seq*.

**WHEREFORE**, Amoko, on behalf of herself and all members of the SC Classes she seeks to represent, prays for the following relief:

A.     Certification of this action as a class action pursuant to Fed. R. Civ. P. 23;

B.     Designation of Amoko as Class Representative;

C.     Designation of Plaintiffs' Counsel as Class Counsel;

D.     A declaratory judgment that the practices complained of herein are unlawful under appropriate state law;

E.     Appropriate equitable and injunctive relief to remedy Defendants' violations of state law, including but not necessarily limited to an order enjoining Defendants from continuing its unlawful practices;

F.      An award of damages in an amount equal to three times the full amount of the unpaid wages, plus costs and reasonable attorney's fees pursuant to S.C. Code Ann. § 41-10-80;

G.      An award of pre- and post-judgment interest, as provided by law; and

H.      Such other injunctive and equitable relief as the Court may deem just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Amoko demands a trial by jury on all questions of fact raised by the Complaint.

Dated:  December 16, 2020

Respectfully submitted,

*s/ Blaney A. Coskrey, III*
Blaney A. Coskrey, III (Fed. ID No. 05421)
Coskrey Law Office
1201 Main Street, Suite 1980
Columbia, SC 29201
Telephone: (803) 748-1202
Fax: (803) 748-1302
coskrey@coskreylaw.com

**Local Counsel for Plaintiff**
**and the Putative Collective and Classes**

and

Meagan M. Rafferty (*Pro Hac Vice to be filed*)
Rebecca King (*Pro Hac Vice to be filed*)
Matt Dunn (*Pro Hac Vice to be filed*)
**GETMAN, SWEENEY& DUNN, PLLC**
260 Fair Street
Kingston, New York 12401
Telephone: (845) 255-9370
Fax (845) 255-8649

20

mrafferty@getmansweeney.com

**Attorneys for Plaintiff
and the Putative Collective Classes**